Mont-Bux, Inc. *v.* R. C. J. McKinstry and Plumstead Township Civic Association. Mont-Bux, Inc., Appellant.

Argued October 8, 1976, before Judges MENCER, ROGERS and BLATT, sitting as a panel of three.

*John A. VanLuvanee,* with him *William H. Eastburn, III,* and *Eastburn and Gray,* for appellant.

*Frank Earnheart* and *R. C. J. McKinstry,* with them *F. J. Rarig,* for appellees.

OPINION BY JUDGE ROGERS, November 19, 1976:

Appellant, Mont-Bux, Inc., received tentative approval from the Board of Supervisors of Plumstead Township of its preliminary plan for the creation of a planned residential development. The Board of Supervisors attached no less than forty-eight conditions to its approval, all of which were accepted and agreed to be met by Mont-Bux, Inc.[1] The appellees are protesting residents who appealed the Supervisor's action of tentative approval to the Plumstead Township Zoning Hearing Board presumably pursuant to Sections 1005 and 1007 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§11005, 11007. Mont-Bux, Inc. then filed its petition pursuant to Section 916 of the Code, 53 P.S. §10916,[2] requesting the court to require the

---

[1] Appellant accepted these conditions pursuant to Section 709(a) of the Pennsylvania Municipalities Planning Code (the Code), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10709(a). This section requires an applicant who has received tentative approval for a PRD with conditions to notify said body within thirty days of receiving the approval of his refusal to accept all the conditions or the tentative approval, along with the conditions, shall stand as granted. We were informed at argument that the approval, with the conditions, became effective as the result of Mont-Bux, Inc.'s failure to object within thirty days.

[2] Section 916 provides:

"Upon filing of any proceeding referred to in section 914 and during its pendency before the board all land development pursuant to any challenged ordinance, order or approval of the zoning officer or of any agency or body, and all official action thereunder shall be stayed unless the zoning officer or any other appropriate agency or body certifies to the board facts indicating that such stay would cause imminent peril to life or property, in which case the development or official action shall not be stayed otherwise than by a restraining order, which may be granted by the board or by the court having jurisdiction of zoning appeals on petition after notice to the zoning officer or other appropriate agency or body. When an application for development, preliminary or final, has been duly approved and proceedings designed to reverse or limit

appellees to post bond as a condition to continuing the proceedings before the Zoning Hearing Board. The lower court denied the prayer of Mont-Bux, Inc.'s petition and this appeal followed. Mont-Bux, Inc. contends that the lower court abused a sound discretion in refusing to order the protestants to post bond.

Abuse of discretion includes not only errors of judgment but also the overriding or misapplication of the law. *Women's Homoeopathic Hospital of Philadelphia Case*, 393 Pa. 313, 142 A.2d 292 (1958).

We have had to consider Section 916 on a number of occasions. In *Driscoll v. Plymouth Township*, 13 Pa. Commonwealth Ct. 404, 320 A.2d 444 (1974), and in *Hercek v. Whitehall Township Zoning Hearing Board*, 20 Pa. Commonwealth Ct. 509, 342 A.2d 127 (1975), landowners who had received building permits which were then attacked by others, asked for bonds under Section 916 and we upheld, against constitutional complaints and attacks based on an asserted abuse of discretion, lower court orders requiring bonds in substantial amounts based on evidence related to the damages reasonably anticipated to be incurred by the landowners as the result of the delay of their projects caused by the appeals. Of course the delay com-

the approval are filed with the board by persons other than the applicant, the applicant may petition the court having jurisdiction of zoning appeals to order such persons to post bond as a condition to continuing the proceedings before the board. The question whether or not such petition should be granted and the amount of the bond shall be within the sound discretion of the court."

Section 107(11), 53 P.S. §10107(11) defines "land development" as:

"'Land development,' (i) the improvement of one lot or two or more contiguous lots, tracts or parcels of land for any purpose involving (a) a group of two or more buildings, or (b) the division or allocation of land or space between or among two or more existing or prospective occupants by means of, or for the purpose of streets, common areas, leaseholds, condominiums, building groups or other features; (ii) a subdivision of land."

plained of is a product of the first sentence of Section 916 providing that during the pendency of the proceeding contesting the approval "all land development pursuant to any challenged ordinance, order of approval of . . . any . . . body, and all official action thereunder shall be stayed. . . ." In *Orleans v. The Melrose Park Improvement Association,* 18 Pa. Commonwealth Ct. 185, 335 A.2d 851 (1975), we affirmed an order requiring an initial $200,000 bond as a condition to pursuing an appeal from a zoning officer's preliminary opinion that plans of a proposed development complied with applicable zoning regulations, pursuant to Section 1005(b) of the Code, 53 P.S. §11005. In *Neshaminy Plaza II v. Kelly,* 21 Pa. Commonwealth Ct. 469, 346 A.2d 884 (1975), we held, *inter alia,* that petitions under Section 916 may be filed in *any* proceedings which have for their purpose the limiting or reversal of any approved application for development. The intendment of Section 916 of the Code and of the cases just mentioned is that, a landowner upon obtaining an approval to develop, whether preliminary, tentative, intermediate or final, may by Section 916 seek protection against his cost of delay by petitioning the court for a bond as a condition to the prosecution of the zoning appeal seeking to limit the approval then in hand.[3]

Adverting again to the facts here, Mont-Bux, Inc. received from the Township Supervisors tentative approval for the construction of 494 dwelling units on 81½ acres of land in Plumstead Township located in an area where planned residential developments are permitted. Planned residential developments are regulated by Article VII of the Code, 53 P.S. §10701 et seq. In summary, the provisions of Article VII are that

---

[3] Section 1008(4) of the Code, 53 P.S. §11008(4) affords the same protection where the zoning appeal is to court as Section 916 provides in the case of appeals to zoning hearing boards.

the governing body may or may not permit planned residential developments; that planned residential developments where permitted may consist of various types of dwelling accommodations and appropriate nonresidential uses; and that these uses, together with design standards, shall be the subject matter of an ordinance adopted by the Township. We understand that Plumstead Township has had such an ordinance since 1973. The Article is expressly designed "to provide an expeditious method for processing a development plan for a planned residential development under the terms of [the] ordinance," and to this end requires the developer to apply for tentative approval; for the governing body to hold a public hearing after public notice thereof; and for the governing body within thirty (30) days thereafter to tentatively approve, deny approval or tentatively approve the development with conditions. Section 710, 53 P.S. §10710, provides that tentative approval does not qualify the developer to obtain building permits; it does, however, provide that the tentative approval may not be modified, revoked or otherwise impaired by the municipality pending an application for final approval. Section 711, 53 P.S. §10711, provides by clear implication that if the final plan conforms with the approved tentative plan, and conditions if any, the final plan *must* be approved by the governing body.

The court below reasoned that no bond should now be required because the appellee's appeal to the Zoning Hearing Board would not delay Mont-Bux, Inc.'s submission of a final plan because it seemed apparent to the court that Mont-Bux, Inc. would be delayed in any case by meeting the 48 conditions and, presumably also because of the time which Mont-Bux, Inc. would need to prepare formal drawings and specifications. This was an error of law and a misreading of Section 916, the first sentence of which provides that during

the pendency of the zoning challenge, "all land development . . . and all official action thereunder shall be stayed." A reading of the 48 conditions imposed with the tentative approval demonstrates that many cannot be met without "official action." For instance, condition 11 reads: "In addition to the parking spaces required by the zoning ordinance, a certain amount of restricted or free paved space shall be provided and maintained near each building so that emergency vehicles may have direct access to each building." Condition 12 reads: "The developer shall construct a shelter for school children who are waiting for transportation at a location on Old Easton Highway to be approved by Plumstead Township. The overall design of the shelter shall be consistent with the design of the other buildings within the PRD. No form of advertising shall be allowed on the shelter." Condition 16 gives the developer an option, obviously to be approved by the Township, to create a water system or to connect to an existing water system, although it assumes that the developer will create a new system, in which case the Township requires feasibility studies. Condition 29 reads as follows: "It is impossible to make an accurate finding with respect to the required parking spaces from the data supplied. It is a condition of this approval that sufficient parking spaces, 10 feet by 20 feet, shall be provided to meet all of the units to be constructed. Under no circumstances will this requirement be modified." Many other of the conditions require the submission of plans and data for approval by the Township engineer or the Township itself. *Such approvals would of course constitute official action which by the plain language of Section 916 has been stayed by the zoning challenge now pending.*

In the respects just mentioned, and by practical consideration of the expenditure for engineering

studies and drawings required to produce a final plan, we think it was an abuse of the lower court's discretion to deny the prayer of Mont-Bux, Inc.'s petition for the posting of bond. Contrary to the lower court's conclusion, it is apparent from the reading of the conditions that Mont-Bux, Inc. will be entirely prevented and hence delayed in the development of a final plan until this zoning appeal is decided.

The court below also concluded that Mont-Bux, Inc. had not satisfactorily proved what damages it will incur as the result of delay. The bulk of the damages sought to be proved by Mont-Bux, Inc. was for the increased building costs caused by the notorious and continuing inflation in prices of materials and labor. These worked out mathematically to something in excess of $34,000 for each month of delay. We find nothing in the record impeaching this evidence and considering that the project is for almost 500 dwelling units are not surprised at the magnitude of the sum claimed as loss. It is not, however, for this Court to fix the amount of bond. This is the duty of the lower court. However, we observe that in the cases we have considered, the lower court whose orders we have affirmed have often ordered bonds to be filed in monthly increments in the amount of the cost accrued monthly, so long as the zoning proceedings are preventing the developer from proceeding with his project.

We therefore believe that the following is an appropriate order.

### ORDER

AND Now, this 19th day of November, 1976, the order of the court below refusing bond is reversed and a bond or bonds in cash or with corporate surety are ordered to be filed by the appellees herein in the amount or amounts fixed by the court below; and the record is remanded to the court below for the prompt

fixing, based on the record, of the amount or amounts of bond or bonds which in its sound discretion will compensate the appellant for the losses it will incur as the result of its inability to proceed with the preparation and submission to Plumstead Township of a final plan conforming to the approved plan and the conditions attached thereto, by reason of the zoning appeal pending.